18496. ZELLNER, Administratrix, *v.* HALL.

HAWKINS, Justice. 1. The petition having been twice amended following the judgment overruling the general demurrer to the original petition, and the demurrer not having been renewed to the petition as thus amended, the exception taken by the defendant to the order overruling such demurrer presents only a moot question. *Mooney* v. *Mooney,* 200 *Ga.* 395 (37 S. E. 2d 195); *Horton* v. *Walker,* 204 *Ga.* 319 (49 S. E. 2d 900); *Holliday* v. *Pope,* 205 *Ga.* 301, 308 (1) (53 S. E. 2d 350).

2. Where, as in this case, a security deed covered both real and personal property, and in case of default, conferred upon the grantee therein the right to sell "in whole or in part" the property thereby conveyed, a foreclosure and sale by the grantee of the personal property located in one county will not be held to amount to an abandonment by the grantee of his lien upon the real estate located in another county. See, in this connection, *Manry* v. *Farmers Bank of Forsyth,* 175 *Ga.* 904 (166 S. E. 653). The ruling here made is not in conflict with the decision in *Ledbetter* v. *McWilliams,* 90 *Ga.* 43 (4) (15 S. E. 634), relied upon by the plaintiff. In that case it was held that, where a petition for foreclosure embraced separate parcels of land, and the rule absolute was confined to one or more separate parcels, and omitted others, the mortgagee abandoned his lien as to the parcels against which no judgment of foreclosure was entered. No such state of facts exists in the instant case.

3. When a grantee in a sales agreement, as a part of the consideration thereof, assumes and agrees to pay an outstanding indebtedness against the property thus conveyed, evidenced by a note and deed to secure debt, he takes upon himself the burden of the debt or claim secured by the deed, and, as between himself and his grantor, he becomes the principal and the latter merely a surety for the payment of the debt. While the holder of the security deed is not bound by such an agreement unless he consents to it, when, with knowledge of such an agree-

ment, he enters into an independent stipulation on his own account with the grantee, as English did in this case, by the entry on the contract between Turner and Gaddis, and signed by him on December 9, 1949, whereby he obtains a new obligation running directly to himself on the footing that the grantee becomes principal, then, in the absence of special conditions, he is held to have recognized and become bound by the relation of principal and surety existing between the maker of the security deed and the grantee. *Stapler* v. *Anderson,* 177 *Ga.* 434, 436 (170 S. E. 498); *Alropa Corporation* v. *Snyder,* 182 *Ga.* 305 (185 S. E. 352).

4. Since the entry made on the original security deed on August 17, 1949, showing a reduction in the amount of the monthly payments called for by the original security deed, and the consequent extension of time of payment, was signed by the plaintiff Hall, he, by that agreement, consented to remain liable for the indebtedness secured by his deed, and that the lien of the security deed should not be released thereby, and the plaintiff's contention that such extension of time of payment by the holder of the security deed operated to discharge him and his property from liability is without merit.

5. The trial court erred in excluding the testimony of the witness W. B. Mitchell, set out in the second ground of the amended motion for a new trial, to the effect that the reduction in the interest rate from 8 to 6 percent per annum was made on July 30, 1948, with the knowledge and consent of the plaintiff Hall, and that from that date interest on the indebtedness assumed by the various transferees of the Gordon Cafe property had only been charged at 6 percent, which included the transaction evidenced by the agreement entered on the back of the original security deed, showing the amount then due on the indebtedness and signed by the plaintiff on August 17, 1949, whereby he consented to remain bound for the payment to English of the indebtedness thereby secured. This evidence was relevant and material to rebut the contention of the plaintiff that such reduction in the rate of interest from 8 to 6 percent was without his consent, and amounted to a novation of his contract with English under the provisions of Code § 103-202, and operated to discharge him from liability. See, in this connection, *Bethune* v. *Dozier,* 10 *Ga.* 235; *Taylor* v. *Johnson,* 17 *Ga.* 521; *Alropa Corporation* v. *Snyder,* supra.

6. Had the evidence held to have been erroneously excluded in the preceding headnote been admitted, it would have made an issue of fact for determination by the jury as to whether such reduction in the interest rate was with or without the consent of the plaintiff, and such exclusion renders erroneous the direction of a verdict for the plaintiff.

*Judgment reversed. All the Justices concur.*

SUBMITTED FEBRUARY 8, 1954—DECIDED MARCH 9, 1954—
REHEARING DENIED MARCH 23, 1954.

*W. B. Mitchell, Williams & Freeman,* for plaintiff in error.
*George Richard Jacob, Kennedy, Kennedy & Seay, A. M. Zellner, Hugh Sosebee, John A. Smith,* contra.

On November 28, 1947, John R. Hall executed and delivered to J. T. English his promissory note for $10,500, bearing interest at 8 percent per annum from date, and payable at the rate of $250 per month. Simultaneously therewith, Hall executed and delivered to English a deed to secure this indebtedness, which was properly recorded, conveying personal property therein particularly described as the fixtures and equipment of what is referred to as the Gordon Cafe, located in Barnesville, Georgia, and also certain described real estate located in the City of Talbotton, Talbot County, Georgia.

Thereafter John R. Hall sold the Gordon Cafe to E. V. Turner and Robert Woodward, and there was entered on the back of the security deed above referred to the following: "We, E. V. Turner and Robert Woodward do hereby assume payment of the balance of $10,000 due on the within bill of sale to secure debt securing a note of even date and agree to pay same at the rate of $200 per month, beginning September 1, 1948, the payment first to be applied to accrued interest to date of payment and the balance to be credited to principal. The assumption of the payment by us does not in any way release the said John R. Hall for his liability to J. T. English, the holder of this security and note."

Thereafter, on August 17, 1949, the following entry was made on the back of the security deed from Hall to English: "Whereas, E. V. Turner has purchased the interest of Robert Woodward in the property known as the Gordon Cafe listed in this security deed; and Whereas, there is now due a balance on said security deed and note in the sum of $9,088.80, which E. V. Turner agrees to assume, but John R. Hall, nor the security deed is released from this lien; and Whereas, John R. Hall and E. V. Turner agree to pay off said balance due at the rate of $125.00 per month beginning September 1, 1949, and to promptly pay said amount on the first of each month thereafter until the balance of principal and interest is paid to J. T. English. Witness our hands and seals this August 17, 1949. [Signed] E. V. Turner, L. S. [and] J. R. Hall, L. S. Witness: C. M. Dunn [and] W. B. Mitchell."

Thereafter E. V. Turner sold the Gordon Cafe property to M. R. Gaddis, who, by the terms of the contract between them, assumed and agreed to pay the balance then due on the original

Hall indebtedness in the amount of $8,413.80, payable $125 per month, with interest at 6 percent per annum, which was secured by the property conveyed. On this contract the following entry was made by J. T. English on December 9, 1949: "The above and foregoing bill of sale, this day, read to me. I agree that the facts set out in the above bill of sale, concerning the indebtedness which I hold, are true, and I agree for M. R. Gaddis to assume and pay said indebtedness, under the terms and conditions, as stated in the above bill of sale."

J. T. English having died in the meantime, it appears from the record that the plaintiff in error, as his administratrix, instituted foreclosure proceedings against the Gordon Cafe personal property covered by the deed from Hall to English, and that this personal property was sold by virtue of that foreclosure proceeding for $750, which was credited on the note or debt of Hall.

Thereafter, the plaintiff in error, Mrs. Vera S. English Zellner, as administratrix of the estate of J. T. English, acting under the power of sale contained in the security deed from Hall to English, advertised for sale the real estate covered by the security deed, whereupon John R. Hall brought his petition to enjoin the sale, contending that the sale of the Gordon Cafe by E. V. Turner to M. R. Gaddis and the agreement with respect thereto by J. T. English was without his knowledge and consent, and that he was thereby relieved from all obligation in connection with the alleged indebtedness due to J. T. English; that he is entitled to have his note and deed to secure debt marked satisfied and delivered to him.

The general demurrer of the defendant to the petition as originally brought was overruled, and to this judgment the defendant excepted pendente lite, and error is assigned thereon in the present bill of exceptions. After this judgment on the demurrer, the petition was twice amended by the plaintiff, but the demurrer was not renewed to the petition as thus amended.

In the amendments to the petition, the plaintiff alleged that, by virtue of the entry of December 9, 1949, by J. T. English on the bill of sale between Gaddis and Turner, whereby English agreed for Gaddis to assume and pay the balance due on the purchase price of the Gordon Cafe, he, the plaintiff, became a surety only and Gaddis became the principal debtor; that, by foreclos-

ing the security deed only as to the personal property therein described, the real estate was discharged from the lien of the security deed; and that the changing of the rate of interest from 8 to 6 percent per annum without consent of the plaintiff amounted to a novation of his original note and security deed, and he was thereby discharged from further liability to the plaintiff.

At the conclusion of the evidence, the trial judge directed a verdict for the plaintiff, and the defendant duly presented a motion for new trial which as amended assigned as error the direction of a verdict and the exclusion of certain testimony offered by the defendant. To the judgment denying the motion for new trial the defendant also excepted.