## 33559. HOUSTON GENERAL INSURANCE COMPANY et al. v. BROCK CONSTRUCTION COMPANY, INC.

HALL, Justice.

We granted certiorari to review the rulings in Divisions 1, 2 and 3 of the opinion of the Court of Appeals in *Brock Const. Co. v. Houston Gen. Ins. Co.*, 144 Ga. App. 860 (243 SE2d 83) (1978). The facts of the case are set out so far as they are material in the opinion of the Court of Appeals.

1. The issue is whether the legislature intended that *compensated* as well as uncompensated sureties be governed by the provisions of Title 103, first enacted in 1860 as part of the codification of the common law. The Court of Appeals ruled that Title 103 was not intended to govern compensated sureties engaged in the writing of surety bonds for profit.

In adopting these sections of the Code, the legislature did not intend to change the common law. *Toomer v. Dickerson,* 37 Ga. 428, 439 (1867). At the time of the enactment of this Code, the issue of whether compensated sureties were to be governed by different rules of surety law had not been decided at common law. If the legislature resolved this issue in passing this Code, it made new law. Yet making new law would have been inconsistent with the intent to merely codify the common law. In light of this, it would appear contrary to the legislative intent to hold that these sections are equally applicable to compensated and uncompensated sureties when the common law now recognizes that somewhat different rules of surety law apply to each group.

Moreover, the legislature provided us with a much stronger indication of its intent in the first section of the Article on the relation of surety and principal (now codified as Title 103): "The contract of suretyship is one whereby a person obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Code § 103-101. The distinction drawn by this section between secondary parties who gratuitously lend their credit to another (sureties), and those who do so in return for compensation (guarantors), is a clear indication that in using the term "surety" the legislature intended to cover only uncompensated sureties.[1]

The rules established by this Code and our cases are

---

[1] Counsel correctly noted that this section does not reflect current law, which recognizes compensated sureties.

so favorable to sureties that we can infer that the sureties covered by those rules are indeed "favorites of the law."[2] See, e.g., Code § 103-202; *Bethune v. Dozier,* 10 Ga. 235 (1851); *Zellner v. Hall,* 210 Ga. 504 (80 SE2d 787) (1954), s. c., 211 Ga. 572 (87 SE2d 395) (1955). Uncompensated sureties risk their estates out of some motive (whether friendship or kinship) other than financial gain; thus it is reasonable for them to claim a favored status. But compensated sureties such as applicant are conducting a business for profit, and therefore have no greater claim for favored status than other businesses. It would be anomalous to hold that they too are entitled to such protection.

Moreover, applicants are in the insurance business, and bonds such as the one in this case are a form of insurance contract. Code § 56-409. See *Home Savings Bank of Columbus v. Mass Bonding &c. Co.,* 19 Ga. App. 352 (91 SE 494)(1917). To apply the extremely protective rules of Title 103 to such contracts would make them a unique form of insurance, and this too would be anomalous.

On the other hand, we recognize that this court has applied provisions of Title 103 to compensated sureties in the past without considering the issue in this case. See *Glens Falls Indemnity Co. v. Southeastern Const. Co.,* 207 Ga. 488, 492 (62 SE2d 149)(1950) and cits. From this counsel for applicant draws the logical inference that Georgia law makes no distinction between compensated and uncompensated sureties. See Gilmore v. Royal Ind. Co., 240 F2d 101 (5th Cir. 1957), but see Winston Corp. v. Continental Casualty Co., 508 F2d 1298 (6th Cir.), cert. den., 423 U. S. 914 (1975). However logical this inference may be, there is no holding of this court (nor even any dicta) on the issue in this case, so far as the research of the parties, amicus, and this court has revealed. Therefore

---

[2] Gratuitous sureties were labeled a "favorite class" by this court as early as 1848. *Jones v. Whitehead,* 4 Ga. 397, 402 (1848). That Justice Lumpkin had in mind gratuitous sureties is made clear by the reference to "these gratuitous obligations." 4 Ga. at 401.

the prior decisions of this court do not settle this issue as a matter of stare decisis, and we certainly cannot be bound by inferences from prior cases in which the issue has not been given any reasoned consideration. Such issues can be settled only after the opposing positions have been tested by the adversary process.

The Court of Appeals has also applied sections of Title 103 to compensated sureties without ruling on the issue. See, e.g., *Sentry Indem. Co. v. Central Elec. Co.,* 136 Ga. App. 557, 558 (222 SE2d 40) (1975). But that court has not resolved the issue in applicant's favor anymore than this court has.

Indeed, the Court of Appeals has ruled against applicant's position in prior cases. *Peachtree Roxboro Corp. v. U. S. Cas. Co.,* 101 Ga. App. 340, 346 (114 SE2d 49) (1960); *Travelers Ind. Co. v. Sasser & Co.,* 138 Ga. App. 361, 366 (226 SE2d 121) (1976). The holdings of these cases are stare decisis, and in the face of this, applicant's inferences are of little weight.[3]

In the instant case the Court of Appeals has unanimously ruled (en banc) on this issue in accordance with the prior cases of that court which are most closely on point. This ruling is not precluded by any decision of this court. In light of this, and the persuasive arguments in favor of this decision, we affirm the ruling of the Court of Appeals that Title 103 was not intended to govern compensated sureties.[4]

This means that the surety law for compensated

---

[3] These cases did not reach the broad issue of the scope of Title 103. But they do establish that some of the sections of that Title do not apply to compensated sureties.

[4] Code Ann. § 103-210 was passed separately from the other sections of Title 103. Ga. L. 1973, p. 825. Nothing said in this opinion is to be considered applicable to that Act. We note that this section is valueless in determining the legislative intent when the other sections were passed more than a century earlier. Moreover, the legislature did not specify the title in which this section was to be codified, thus we cannot be sure that the Act belongs in Title 103.

sureties must be found in the common law of this state. We note that Title 103 is largely a codification of the common law of surety and principal, and that many of the rules of surety law are the same or similar for compensated and uncompensated sureties. Thus we will look to Title 103, and the cases decided thereunder, as persuasive authority as to the law governing compensated sureties. Whether particular rules established under that Title differ from the law to be applied to compensated sureties must be decided on a case-by-case basis.

2. The holding that the rule of "strict law" set forth in Code § 103-103 does not apply to compensated sureties is a correct determination of the common law, and we affirm it. We stress, as did the Court of Appeals, that the inapplicability of the rule of "strict law" does not detract from the independent principle that where the contract is unambiguous and subject to only one construction, the liability of any surety (whether compensated or not) is not to be extended beyond the terms of the contract by implication or interpretation.

3. In Division 3 (B) of the opinion below, the Court of Appeals held that Code § 103-203 is applicable to compensated sureties, and then interpreted that section. We cannot agree with the holding that this section applies of its own force to compensated sureties, although we do agree that the rule stated is a correct statement of the common law applicable to compensated sureties.[5] While we must look to the provisions of Title 103 as persuasive authority as to what the common law is as to compensated sureties, those sections do not apply of their own force to compensated sureties. It is the common law which governs of its own force, since we have held that the legislature intended these sections to govern only uncompensated sureties.

To apply the Code sections themselves to compensated sureties would also invite an unintended reinterpretation of these sections, and perhaps result in a

---

[5] This does not mean that the pro tanto discharge theory has been rejected. That theory has not been considered in this case.

change in the rule for gratuitous sureties. Care must be taken to avoid a change in the interpretation of the Code when similar, but distinct rules are applied to compensated sureties. Therefore it is important to distinguish between common law and statutory rules.

*Judgment affirmed. All the Justices concur, except Bowles and Marshall, JJ., who dissent.*

ARGUED JUNE 12, 1978 — DECIDED
JUNE 28, 1978.

*Gambrell, Russell & Forbes, David M. Brown, Michael Elsberry,* for appellant.

*Smith, Currie & Hancock, Kent P. Smith, Schreeder, Wheeler & Flint, David H. Flint, Rodney C. Jones,* for appellees.

*Van Gerpen & Bovis, John V. Burch, Phillips, Hart & Mozley, Robert B. Wedge, Morris, O'Brien, Manning & Brown, Joseph R. Manning, Glenn A. Delk,* amicus curiae.

UNDERCOFLER, Presiding Justice, concurring.

You can call a camel an elephant but that won't make its hump disappear. Labels do not change substance. As noted by scholars, whether a contract is a suretyship or a guaranty is a distinction without a difference.

"Essentially, there is no difference between guaranty and suretyship. The difficulty is merely one of terminology, and all of the confusion may be rested there. When the creditor proceeds against the principal or the security, his position may be determined by reference to the ordinary principles of contracts." Overton & Field, The Difference Between Guaranty and Suretyship in Georgia — An Effort in Futility — 2 Ga. Bar J., No. 2, 25 (1939). See also Green, The Distinction Between Guaranty and Suretyship in Georgia, 9 Ga. Bar J., 273 (1947); Radin, Guaranty and Suretyship, 17 Cal. L. R. 605 (1929).

The General Assembly would render a valuable service to the citizens, the lawyers, and the courts by abolishing the distinction between contracts of surety and

guaranty. This was the recommendation of the American Law Institute as early as 1941. Restatement of the Law of Security. The Georgia Uniform Commercial Code provides, " 'Surety' includes guarantors." The Georgia Insurance Code provides that where bonds are required by law, surety insurance companies doing a surety insurance business may be released from their bonds on the same terms and conditions as are prescribed by law for the release of individuals. Code Ann. § 56-2435.

In my opinion the General Assembly should also abolish the rule of strictissimi juris which originated in medieval England and is entirely inappropriate under modern business practices.