**UNITED STATES of America, Plaintiff,**

**v.**

**BLUE DOLPHIN ASSOCIATES, INC., and Alvin S. Hirsch, Kay T. Hirsch, in personam, and F/V BLUE DOLPHIN, Official No. 610154, in rem, Defendants.**

**Civ. A. No. 483–344.**

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 21, 1985.

Melissa Mundell, Asst. U.S. Atty., Savannah, Ga., for plaintiff.

Barnard Portman, Savannah, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

The United States of America brought this action *in rem* against the fishing ves-

sel BLUE DOLPHIN ("BLUE DOLPHIN") and *in personam* against Blue Dolphin Associates and the Hirsches to foreclose on a preferred ship mortgage and to collect amounts due under two promissory notes. Before this Court is plaintiff's motion for summary judgment against the Hirsches. Having read and considered the parties' briefs in support of their respective positions, the Court is of the opinion that summary judgment should be granted.

## FACTUAL BACKGROUND

On August 28, 1979, Coastal Production Credit Association ("Coastal") loaned Blue Dolphin Associates $97,300 toward the purchase of the BLUE DOLPHIN. Plaintiff's Complaint, Ex. B. The United States guaranteed payment of the loan and, as security for its guaranty, obtained a preferred ship mortgage on the vessel. Plaintiff's Complaint, Ex. D. The United States also required Blue Dolphin Associates to execute a promissory note for the amount of the loan. This note was signed by Gene Couch, president of the corporation, and attested by Alvin Hirsch, secretary of the corporation. Plaintiff's Complaint, Ex. C. In addition, plaintiff required Alvin and Kay Hirsch to guarantee unconditionally the promissory note and mortgage executed by Blue Dolphin Associates. The Hirsches signed the guaranty agreement in their personal capacities. Plaintiff's Complaint, Ex. H.

Evidently, the fishing business produced more tall tales than catch, for Blue Dolphin Associates soon found itself in deep financial waters. On April 22, 1981, the corporation borrowed an additional $18,828 directly from plaintiff in order to keep up the payments to Coastal on the BLUE DOLPHIN. Plaintiff's Complaint, Ex. K. This note was also signed by Couch in his corporate capacity and attested by Alvin Hirsch. As security for the second loan, plaintiff took out a second preferred ship mortgage on the BLUE DOLPHIN. Plaintiff's Complaint, Ex. L. Plaintiff again required Alvin and Kay Hirsch to personally guarantee payment of the note. Plaintiff's Complaint, Ex. O.

The Blue Dolphin Associates' fishing venture ran aground for the last time in March 1983, when the corporation fell behind in its payments to Coastal. Coastal timely demanded that the United States pay the loan in full in accordance with its guaranty, and plaintiff did so. Plaintiff's Complaint, Ex. F. Plaintiff, in turn, demanded that Blue Dolphin Associates pay its indebtedness in full and instituted the present action to collect the amounts owed it under the two promissory notes. Plaintiff's Complaint, Ex. G. As defendants, plaintiff named the BLUE DOLPHIN, Blue Dolphin Associates as the principal, and the Hirsches as guarantors.

The BLUE DOLPHIN was arrested in August 1983 and sold at auction on December 6, 1983, for $66,000. The sale was confirmed by Order of this Court on January 10, 1984. A final decree of foreclosure was issued on March 19, 1984. Blue Dolphin Associates never answered the complaint nor otherwise mounted a defense, and on July 1, 1985, default judgment was entered against that defendant for the deficiency remaining unsatisfied after the sale of the BLUE DOLPHIN. Now, by motion for summary judgment, plaintiff seeks a deficiency judgment against the Hirsches as guarantors of the two promissory notes Blue Dolphin Associates executed.

## DISCUSSION

The Hirsches mount four arguments in opposition to the motion for summary judgment. They contend the guaranty agreements must fail for want of consideration. They also maintain that any guaranty by Kay Hirsch is invalid because it violated former Ga.Code Ann. § 53–503 (Harrison 1982). The Hirsches further contend they should be discharged from liability on their guaranties because plaintiff failed to pursue the principal upon demand, as required by O.C.G.A. § 10–7–24 (Michie 1982). Finally, these defendants argue they should be released from liability under O.C.G.A. § 10–7–22 (Michie 1982) because plaintiff took acts which increased the risk of the guarantors. The Court finds these arguments unpersuasive.

To be enforceable, a guaranty agreement must show a consideration flowing to the guarantor.[1] *Jackson v. First Bank*, 150 Ga.App. 182, 256 S.E.2d 923 (1979); *Bearden v. Ebcap Supply Co.*, 108 Ga.App. 375, 133 S.E.2d 62 (1963). However, the benefit to the guarantor need not be direct. *Musgrove v. Luther Publishing Co.*, 5 Ga.App. 279, 63 S.E. 52 (1908). A benefit to the principal, such as an extension of credit, is sufficient to bind a guarantor under O.C. G.A. § 10–7–1 (Michie 1982). *Delta Diversified, Inc. v. Citizens & Southern National Bank*, 171 Ga.App. 625, 320 S.E.2d 767 (1984); *Griswold v. Whetsell*, 157 Ga. App. 800, 278 S.E.2d 753 (1981); *Tennille Banking Co. v. Ward*, 29 Ga.App. 660, 116 S.E. 347 (1923); *Jordan v. First National Bank*, 19 Ga.App. 118, 91 S.E. 287 (1917).

■ In light of the foregoing authorities, any argument that the Hirsches received no consideration for their guaranties is patently frivolous. Alvin Hirsch was a 10% stockholder in Blue Dolphin Associates, served as secretary of the corporation and acted as captain of the BLUE DOLPHIN. Blue Dolphin Associates could not have obtained the loan which enabled it to buy the BLUE DOLPHIN were it not for the Hirsches' personal and unconditional guaranty of the debt. In return for their guaranty, plaintiff guaranteed the loan from Coastal to Blue Dolphin Associates. Essentially, plaintiff financed the Hirsches' business, thereby conferring a direct benefit on Blue Dolphin Associates and an indirect benefit on the Hirsches.

■ Even if consideration existed for the first guaranty agreement, the Hirsches argue that new and independent consideration was necessary for their guaranty of the direct loan from the Secretary of Commerce to Blue Dolphin Associates. It is true that past consideration will not support a contract of guaranty. *Gwinnett Community Bank v. Flake*, 151 Ga.App. 578, 260 S.E.2d 523 (1979); *Jackson v. First Bank, supra; Bearden v. Ebcap*

*Supply Co., supra.* However, an indulgence to the principal, such as an extension of time to pay a debt, is sufficient consideration to support a guaranty agreement. *Hollingshead v. American National Bank*, 104 Ga. 250, 30 S.E. 728 (1898); *Oliver v. Citizens DeKalb Bank*, 150 Ga. App. 437, 258 S.E.2d 204 (1979). In the instant case, the second loan gave defendants an opportunity to get their fishing business on its feet when it looked like it might founder on the rocks of financial hardship. Seen in this light, it is clear that the Hirsches obtained a benefit from the second guaranty.

■ These defendants also assert that Kay Hirsch is not liable on her guaranties because they violated former Ga.Code Ann. § 53–503. Section 53–503 provided:

> The wife is a *femme sole* as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she may not bind her separate estate to any contract of suretyship nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts shall be absolutely void.

This statute was repealed effective April 4, 1979. *See* Act No. 86, 1979 Ga.Laws 466, 496. No laws restricting a married woman's power to act as a surety or guarantor for her husband's debts were enacted in place of § 53–503. Both guaranty agreements at issue here were executed *after* the repeal of § 53–503, and its provisions are thus wholly inapplicable and irrelevant to Kay Hirsch's liability on her two guaranty agreements.

The Hirsches next contend they should be discharged from liability on their guaranties because plaintiff failed to pursue the principal upon demand, as required by O.C. G.A. § 10–7–24. Section 10–7–24 provides, in pertinent part:

---

**1.** The common law distinction between guarantors and sureties was abolished by the Georgia General Assembly in 1981. *See* 1981 Ga.Laws

870; *Balboa Insurance Co. v. A.J. Kellos Construction Co.*, 247 Ga. 393, 276 S.E.2d 599 (1981).

Any surety, guarantor, or endorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor, his agent, or any person having possession or control of the obligation, to proceed to collect the debt from the principal...; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this state), the endorser, guarantor, or surety giving the notice ... shall be discharged. No notice which does not state the county in which the principal resides shall be considered a compliance with the requirements of this Code section.

This section is in derogation of the common law and should be strictly construed. *Howard v. Brown*, 3 Ga. 523 (1847). Prior to its enactment in 1821, a surety or guarantor had no right to demand that the holder pursue the principal and no right to release from liability if the holder failed to do so. *Thomas v. Clarkson*, 125 Ga. 72, 54 S.E. 77 (1906); *Preston Carroll Co. v. Morrison Assurance Co.*, 173 Ga.App. 412, 326 S.E.2d 486 (1985) (citing *Howard*). The sole purpose of § 10–7–24 is to accord sureties a means to compel creditors to sue the principal upon accrual of a cause of action. *A.J. Kellos Construction Co. v. Balboa Insurance Co.*, 661 F.2d 402 (5th Cir. Unit B 1981).

Because the guarantor derives his right to release from the statute rather than his contract, § 10–7–24 acts as an extinguishment of a remedy and is in the nature of a limitation of actions. *Sally v. Bank of Union*, 150 Ga. 281, 103 S.E. 460 (1920). Accordingly, since the section operates as a restriction upon the rights of holders, strict compliance with the statutory requirements is a prerequisite to discharge. *Glasser v. Decatur Lumber & Supply Co.*, 95 Ga. App. 665, 99 S.E.2d 330 (1957). One statutory requisite is that the creditor be given written notice. Absent unusual circumstances, an oral demand that the holder pursue the principal will not trigger the protection of § 10–7–24. *Johnson v. Longley*, 142 Ga. 814, 83 S.E. 952 (1914); *Tim-mons v. Butler, Stevens & Co.*, 138 Ga. 69, 74 S.E. 784 (1912); *Gettis v. Gormley*, 49 Ga.App. 339, 175 S.E. 393 (1934). Another requisite is that the principal either reside or be amenable to suit in Georgia. *Glasser v. Decatur Lumber & Supply Co., supra; Fricks v. J.R. Watkins Co.*, 88 Ga.App. 276, 76 S.E.2d 518, *rev'd on other grounds*, 210 Ga. 83, 78 S.E.2d 2 (1953). Finally, the notice must state the county of the principal's residence.

■ Other than the Hirsches' bare assertion that they did in fact encourage plaintiff to pursue Blue Dolphin Associates and its president, Gene Couch, the record here gives no indication that the Hirsches have complied with the statutory prerequisites to discharge under § 10–7–24. The Court has before it no written document commanding plaintiff to pursue the principal and identifying its county of residence. Indeed, it is not even clear whom the Hirsches would like plaintiff to sue—Blue Dolphin Associates or Gene Couch. Blue Dolphin Associates was the maker of both notes in question, and plaintiff has already obtained a default judgment against that entity for the amount of the deficiency remaining after the BLUE DOLPHIN was sold. Assuming *arguendo* that plaintiff had a duty under § 10–7–24 to pursue the principal, plaintiff has fulfilled its obligation by proceeding against Blue Dolphin Associates.

■ Gene Couch's personal liability, if any, on the two promissory notes is not properly before this Court because Couch resides in Ridgeland, South Carolina, well outside the jurisdiction of the United States District Court for the Southern District of Georgia. Couch is not a party to this lawsuit. Moreover, since Couch is a South Carolina resident who apparently is not amenable to suit in Georgia, § 10–7–24 is inapplicable as to him. By its very terms, the statute affords protection to sureties *only* when the principal resides or can be sued in Georgia. *Glasser v. Decatur Lumber & Supply Co., supra; Fricks v. J.R. Watkins Co., supra.* In sum, § 10–7–24 affords the Hirsches no relief.

The Hirsches' final argument is that they should be discharged from liability under § 10–7–22 because plaintiff took acts which increased their risk as guarantors. Section 10–7–22 provides:

> Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him; a mere failure by the creditor to sue as soon as the law allows or neglect to prosecute with vigor his legal remedies, unless for a consideration, shall not release the surety.

This section is merely a codification of the common law rule relating to the discharge of sureties. *Timmons v. Butler, Stevens & Co., supra; Toomer v. Dickerson*, 37 Ga. 428 (1867); *Jones v. Whitehead*, 4 Ga. 397 (1848); *Brown v. Executors of Riggins*, 3 Ga. 405 (1847).

█ This argument need not detain the Court long. To the extent that the Hirsches found their risk increased because plaintiff failed to pursue the principal upon demand as required by § 10–7–24, their claims have been addressed earlier in this Order and do not bear repeating. To the extent that the Hirsches complain that the seizure and sale of the BLUE DOLPHIN increased their risk in violation of § 10–7–22, their arguments must fail.

The commission of some act authorized by law, even one which tends to increase the risk of the guarantor, will not operate as a discharge under § 10–7–22. *Timmons v. Butler, Stevens & Co., supra; Stewart v. Barrow*, 55 Ga. 664 (1876). As the Georgia Supreme Court explained over a century ago: "It will not do to hold that because a creditor in the prosecution of his remedy to collect his debt against several joint promissors, does an act which the statute law of the state expressly authorized him to do, that such an act will operate as a discharge of a surety." *Stewart v. Barrow, supra*, at 667.

Plaintiff had every right under its first and second preferred ship mortgages to bring an *in rem* foreclosure action against the BLUE DOLPHIN, which it did. *See also* Ship Mortgage Act of 1920, 46 U.S.C. § 911 *et seq.* (1982). The proper time to challenge the circumstances surrounding the auction was when plaintiff filed its motion to confirm the sale. At the very latest, any objections to the handling of the sale should have been raised before the final decree of foreclosure was entered in March 1984. It is readily apparent that the Hirsches' claims about increased risk are nothing more than a thinly disguised effort to relitigate the propriety of the foreclosure sale. The Court, therefore, finds no grounds for discharge under § 10–7–22.

## CONCLUSION

Having determined that no genuine issue of material fact remains to be tried and that plaintiff is entitled to judgment as a matter of law, plaintiff's motion for summary judgment against Alvin and Kay Hirsch is hereby GRANTED.

IT IS ORDERED that judgment be entered against Alvin and Kay Hirsch, jointly and severally, in the amount of $44,138.73, together with interest at 12% per annum, at a daily rate of $12.99 from February 14, 1985, until this date, and at this Court's judgment rate of interest from this date forward until paid in full.

IT IS FURTHER ORDERED that judgment be entered against Alvin and Kay Hirsch, jointly and severally, in the amount of $19,929.69, together with interest at the maximum legal rate from May 23, 1983, until this date, and at this Court's judgment rate of interest from this date forward until paid in full.